# In the United States Court of Federal Claims

No. 07-232 C
(Filed: March 30, 2009)

**************************************

| | |
|---|---|
| **CHRISTOPHER J. GRUSH,** | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| **THE UNITED STATES,** | * |
| | * |
| Defendant. | * |
| | * |

**************************************

## OPINION

Before the Court is a motion by Defendant, the United States ("the Government"), requesting that judgment be entered in its favor in regard to a claim by Plaintiff, Christopher Grush ("Mr. Grush"), for compensation under the Fair Labor Standards Act ("FLSA") for the time he spent commuting to and from work. Mr. Grush was employed by the Drug Enforcement Agency ("the DEA") as a diversion investigator and, in that capacity, drove a DEA vehicle from his home to various "field work" locations to begin his workday and drove the vehicle home at the end of his workday. The Government argues that the fact that Mr. Grush was commuting in a government-owned vehicle and the fact that he commuted to "field work" locations are irrelevant and that, per binding Federal Circuit precedent interpreting the FLSA, Mr. Grush is not entitled to compensation for the time he spent commuting unless he establishes that the DEA imposed non-trivial burdens and restrictions on Mr. Grush during his commute that constituted legally cognizable work.

The Court finds the Government's argument based on *Adams v. United States*, 471 F.3d 1321 (Fed. Cir. 2006) and *Bobo v. United States*, 136 F.3d 1465 (Fed. Cir. 1998) to be persuasive. Because Mr. Grush has not established, or even alleged, that there were any burdens or restrictions imposed on his commute by the DEA which would surpass the *de minimis* threshold, the parties do not dispute any of the material facts in this case. Based on the *Adams* and *Bobo* decisions, it is clear that driving in a government vehicle and driving to a "field work" location are not burdens which transform a commute into legally cognizable work. Additionally, Mr. Grush has not convinced the Court that *Adams* and *Bobo* should not be followed, as his argument that the decisions are "wrong" is irrelevant and his assertion that they have been

impliedly overruled is incorrect.  Accordingly, the Court holds that the Government is entitled to partial summary judgment as a matter of law and GRANTS the Government's motion.

**I.      The FLSA, The Portal-to-Portal Act, and The Employee Commuting Flexibility Act of 1996**

The Court will begin by providing a discussion of the FLSA and the relevant implementing regulations to give a context for Mr. Grush's claim.  The FLSA was originally enacted in 1938 "to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act."  *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602, 64 S. Ct. 698, 705 (1944).  One requirement under the FLSA, as interpreted by the Office of Personnel Management ("OPM"), is that certain federal government employees must be paid overtime pay whenever the government requires or permits the employees to work beyond a weekly maximum hour limit.  *See* 29 U.S.C. § 207; 5 C.F.R. § 551.401(a).  The OPM defines hours of work that count toward the weekly maximum hour limit as "[a]ll time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency . . . ."  5 C.F.R. § 551.401(a).

Shortly after enactment of the FLSA, Congress enacted the Portal-to-Portal Act to pare back the initially broad interpretation of what constituted compensable work.  *Adams v. United States*, 471 F.3d 1321, 1325 (Fed. Cir. 2006).  Specifically, the Portal-to-Portal Act clarified that employers are not required to compensate their employees under the FLSA for "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform. . . ."  29 U.S.C. § 254(a).  In implementing this provision, the OPM promulgated a regulation that states, quite clearly, "an employee who travels from home before the regular workday begins and returns home at the end of the workday is engaged in normal 'home to work' travel; such travel is not hours of work."  5 C.F.R. § 551.422(b).

Supplementing and further clarifying the Portal-to-Portal Act, Congress then enacted the Employee Commuting Flexibility Act of 1996, which further clarified that even when commuting in a vehicle supplied by the employer, an employee is still engaged in non-compensable "home-to-work" travel:

> the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a).  Thus, the statutes and regulations concerning employee travel time make

clear that time spent simply commuting to and from work, even if done in the employer's vehicle, cannot alone be considered compensable hours of work. It is against this backdrop that Mr. Grush's claim for compensation for his time spent commuting in a government vehicle is to be considered.

## II.    Factual Background and Procedural History

Between February 2005 and April 2006 (approximately fourteen months), Mr. Grush was employed by the DEA as a "diversion investigator." Pl.'s Suppl. App. at 210. Generally speaking, diversion investigators "investigate drug manufacturers and distributors, importers and exporters, narcotics treatment programs, medical practitioners and pharmacies" as part of the DEA's efforts to "prevent[] the diversion of legitimate pharmaceutical drugs and disrupt[] the illicit production of controlled substances by preventing the diversion of chemicals used to make illegal drugs such as cocaine, heroine and methamphetamine." *Id.* at 210. Mr. Grush's duties, in particular, included inspecting "private facilities engaged in handling controlled substances" and "conducting criminal investigations of violations of federal laws relating to the improper diversion of controlled substances." *Id.* at 211.

Frequently, Mr. Grush drove a DEA vehicle from his home in Columbia, Maryland, to "various field locations where [his] field work was conducted." *Id.* Those "field locations" included such places as the United States Attorneys' Offices in Baltimore and Greenbelt, Maryland; various state, county, and local police departments and agencies; and pharmacies in at least five different counties in Maryland.[1] *Id.* at 211-212. Mr. Grush has not, at any point during the course of this litigation, explicitly alleged (much less proffered evidence tending to prove) to the Court that he was required to perform any specific duties while driving from his home to the "field locations." Mr. Grush did, however, submit as an exhibit a memorandum from the Deputy Administrator of the DEA, dated July 3, 2006, which expressly granted permission to DEA employees driving government vehicles to use the vehicles for personal purposes, "such as picking up dry cleaning, hospital visitation, or stopping by a convenience store, bank, school or work out facility." *Id.* at 134.

In fact, Mr. Grush does not even allege that the DEA actually required him to drive the government vehicle from home to work at all. In his appendix, Mr. Grush submitted copies of another diversion investigator's request forms for authorization to drive a DEA vehicle. Pl.'s Suppl. App. at 1-103. It seems as though that diversion investigator was only able to obtain temporary permission to use a government vehicle for approximately two week intervals and had to continually and successively file new requests for use of a vehicle for the majority of a four year period. The Court is unclear as to precisely why Mr. Grush submitted these forms, as he

---

[1] Mr. Grush has not presented an argument to the Court that any of these so-called "field work" locations were outside the "normal commuting area," as that phrase is used in the Employee Commuting Flexibility Act of 1996, quoted above.

does not mention them in his argument.  If the documentation for that diversion investigator was intended by Mr. Grush to imply that all diversion investigators had to go through similar procedures, then these exhibits actually tend to make it appear that, instead of being *required* to drive government vehicles, diversion investigators actually had to make quite an effort to obtain the ability to *voluntarily* drive DEA vehicles from home to work.

In April 2007, Mr. Grush filed his complaint in this Court.  In pertinent part, Mr. Grush's complaint alleges that the DEA:

> wrongfully and wilfully withheld overtime compensation due plaintiff and others similarly situated by failing and refusing to pay them in accordance with FLSA for hours worked in excess of forty each week.  Such overtime hours include but are not limited to hours during which defendant and its officers and agents directed and/or suffered or permitted plaintiff to work without paying him any compensation whatsoever, including *travel*, training and other work performed by plaintiff on defendant's behalf.

Compl. ¶ 12 (emphasis added).  A settlement has been reached regarding Mr. Grush's claims for training and other work performed by him, leaving his claim for overtime pay for time spent "traveling" as the only remaining claim for the Court to entertain.  In his brief in response to the Government's motion, Mr. Grush explains that his claim for overtime pay for his "travel" time is a claim for compensation for the time he spent commuting in his DEA vehicle from home to his first work location (whether it was the DEA office or a field location) and then back home again.

In July 2007, the Government filed an unopposed motion to stay the case pending the outcome of a writ of certiorari in *Adams v. United States*, 471 F.3d 1321 (Fed. Cir. 2006).  It appeared from the Government's motion that the parties had agreed that the decision in *Adams* would bear substantially on the outcome in this case, if not control the outcome entirely, as *Adams* dealt with the issue of "whether plaintiffs are entitled to be compensated for driving a Government-owned vehicle from home to work and work to home."  Def.'s Mot. to Stay, July 31, 2007, at 2.  Approximately seven months after the Court granted the request to stay the case, the parties filed a joint status report indicating that the writ of certiorari in *Adams* had been denied.  Mr. Grush then took the position that *Adams* does not dictate the outcome of this case, and requested that further discovery take place.  The Government disagreed, and suggested that an immediate motion for judgment on the pleadings would be the appropriate course.

The Court ordered the Government to file its motion, which the Government did on May 7, 2008.  Principally, the Government argued that Mr. Grush's claim is not meaningfully distinguishable from the claims at issue in *Adams* and that *Adams* therefore dictates that Mr. Grush is not entitled to relief.  In his response brief, Mr. Grush first argued that *Adams* was wrongly decided and should not be followed, and that the law has changed since *Adams* was decided.  Mr. Grush also insinuated that he would be able to prove that his time spent driving

was sufficiently factually distinct from *Adams* such that *Adams* would not be controlling. Because Mr. Grush was referring to evidence outside the pleadings, the Court converted the Government's motion to one for partial summary judgment. However, because Mr. Grush did not substantiate his insinuation by actually identifying the evidence he referred to, the Court ordered supplemental briefing to clarify this issue. The Court stated that Mr. Grush's brief left it "uninformed as to precisely which characteristics of Plaintiff's driving time allegedly distinguish it from the driving time discussed in *Adams*" and instructed Mr. Grush to limit his supplemental brief to a discussion of the factual differences if any between his commute and *Adams*. Order, Sep. 15, 2008, at 2. Mr. Grush's supplemental brief was required to include, at a minimum, an affidavit from Mr. Grush describing the nature of his commute.

Instead of filing a brief in conformance with the Court's instructions, Mr. Grush filed a cross-motion for summary judgment in which he made mostly legal arguments. The Court struck this motion and then subsequently denied a motion by Mr. Grush for reconsideration of the Court's order striking the cross-motion. On December 5, 2008, Mr. Grush finally filed his supplemental brief.[2] In his supplemental brief, Mr. Grush explained his factual argument by stating that his case "is distinguishable from Adams because [it] involves driving by plaintiff between his home and 'field work' locations which results in more time being spent by plaintiff working at 'field work' locations than if he drove his own car to his office, picked up a government vehicle there, and then drove to his 'field work' locations." Pl.'s Supp. Br. at 1. The affidavit supplied by Mr. Grush primarily explains his duties as a DEA Diversion Investigator in general, and does not identify any additional restrictions or requirements imposed on his commute by the DEA.

## III.   Motions for Judgment on the Pleadings, RCFC 12(c), and the Standard for Summary Judgment Under RCFC 56

Because Mr. Grush, in his response brief, referred to matters outside the pleadings, the Court converted the Government's motion to one for partial summary judgment. *See* Order, September 15, 2008. Therefore, the Government's motion will no longer be decided based on the standard for RCFC 12(c) motions. *Colvin Cattle Co., Inc. v. United States*, 468 F.3d 803, 806 (Fed. Cir. 2006). Instead, after giving both parties the opportunity to present any affidavits or other materials appropriate for a motion for summary judgment, the Court will now consider the Government's motion under the RCFC 56(c) standard. In other words, the Court will only grant the Government's motion if there is no genuine issue as to any material fact and the Government is entitled to a judgment as a matter of law. RCFC 56(c); *Long Island Savings Bank, FSB v. United States*, 503 F.3d 1234, 1243-44 (Fed. Cir. 2007).

---

[2] In addition to his brief Mr. Grush also supplied a set of proposed findings of "fact" and a 215-page appendix. A substantial number of his findings of "fact" are simply quotations and characterizations of various regulations Mr. Grush evidently believes are beneficial to his case.

**IV.      The Government's Argument and the Federal Circuit Decisions in *Adams* and *Bobo***

In its motion, the Government argues that *Adams* and *Bobo*, the case principally relied upon in *Adams*, are controlling precedent that require a judgment in favor of the Government in regard to Mr. Grush's driving time claim.  The Government is not disputing that the overtime provisions of the FLSA apply to Mr. Grush, but simply asserts that, according to *Adams* and *Bobo*, Mr. Grush's commute does not constitute compensable "hours of work" under the FLSA

In *Bobo*, a group of INS Border Patrol agent dog handlers were denied compensation for their commuting time pursuant to the FLSA because the duties they performed while driving were *de minimis*.  136 F.3d 1465, 1466-67 (Fed. Cir. 1998).  The agents were required to drive government vehicles to and from work to transport their dogs, were prohibited from making personal stops while driving the vehicles, had to make frequent stops for the dogs, were required to monitor their radios while driving, and were required to lookout for suspicious activity while driving.  *Id.* at 1466-67.  In its explanation of the FLSA standards, discussed above, the Federal Circuit noted that simply commuting to work in a government vehicle is not compensable hours of work.  *Id.* at 1468.  Rather, to establish that an employee's time spent commuting is compensable under the FLSA, the Federal Circuit stated that there must be requirements or restrictions placed on the employee while commuting that surpass the *de minimis* threshold.  *Id.*  In the dog handlers' situation, the restriction on personal stops and the requirements of frequent stops for the dogs, monitoring the radios, and looking out for suspicious activity were considered to be trivial and therefore did not "give rise to a valid or even triable claim for compensation under the FLSA." *Id.*  Despite the statement in 5 C.F.R. § 551.401(a), one of the OPM regulations implementing the FLSA, that compensable hours of work shall include "[a]ll time spent by an employee performing an activity *for the benefit of an agency*," the fact that the restrictions and requirements on the Border Patrol agents' commutes inured to the benefit of the INS did not affect the Federal Circuit's analysis because they were *de minimis*.  *See* 5 C.F.R. § 551.401(a) (emphasis added).

Subsequently, in *Adams*, the Federal Circuit reiterated that "merely commuting in a government-owned vehicle is insufficient; the plaintiffs must perform additional legally cognizable work while driving to their workplace in order to compel compensation for the time spent driving."  471 F.3d 1321, 1325 (Fed. Cir. 2006).  The plaintiffs in *Adams* were employees of the DEA,[3] the U.S. Secret Service, the U.S. Customs Service, the Bureau of Alcohol, Tobacco, and Firearms, and the IRS's Criminal Investigation Division.  *Id.* at 1323.  They were required as a condition of their employment to drive government-issued vehicles to and from work.  *Id.*  While commuting, they were prohibited from making any personal errands and were required to have their weapons and other law enforcement-related equipment with them.  *Id.*  As in *Bobo*, the

---

[3] Though some of the plaintiffs in *Adams* were employees of the DEA, it does not appear that they held the position of "Diversion Investigator," the position in which Mr. Grush was employed.

court found that these restrictions and requirements were merely *de minimis* and did not make the plaintiffs' commutes compensable. The Federal Circuit also addressed several of the same legal arguments that Mr. Grush now makes before this Court, to be discussed in more detail below, concluding that (1) statutes addressing an agency's authority to permit employee use of government vehicles do not imply that such use would constitute compensable hours of work and (2) the Government need not adduce additional independent evidence to show that plaintiffs cannot establish the compensability of their commutes, as it is ultimately a plaintiff's burden to show entitlement to compensation under the FLSA.

The Government argues that, based upon this binding precedent, Mr. Grush's case cannot proceed because he has not established or even alleged that the DEA imposed any restrictions or requirements on Mr. Grush's commute which are more than merely *de minimis*. Indeed, as the Government points out, Mr. Grush's complaint merely provides the bare, conclusory assertion that he is owed overtime pay for "travel" and he has not elsewhere alleged any details to distinguish his commute from *Adams* and *Bobo*. The burden is now therefore upon Mr. Grush to rebut the Government's assertion by pointing to evidence or allegations which, when considered in a light most favorable to Mr. Grush, would serve to establish that non-trivial restrictions or requirements imposed by the DEA on his commute constituted "legally cognizable work."

## V.     Analysis

Mr. Grush presents three arguments concerning why his case should be permitted to continue. Mr. Grush's first argument is factual: he asserts that his commute is different from the commutes in *Adams* and *Bobo* to an extent that distinguishes the holdings in those cases. Mr. Grush's other two arguments are legal: he asserts that *Adams* was wrongly decided and should not be followed and that there are at least two Supreme Court opinions which issued after *Adams* that changed the law applicable to Mr. Grush's case.[4]

### A.     The Factual Nature of Mr. Grush's Commute

Though Mr. Grush insists that his case is factually distinguishable from *Adams* and *Bobo*, Mr. Grush has not, in his complaint, his response brief to the Government's motion, his supplemental brief, or his affidavit informed the Court of any restrictions or requirements imposed upon his commute which were any more burdensome than those addressed in *Adams* and *Bobo*.[5] The fact that Mr. Grush was driving his employer's vehicle is irrelevant in light of

---

[4] Though he does not specifically say so in his briefing, the Court presumes that Mr. Grush must also be asserting that *Bobo* was wrongly decided and has been overruled, as the holdings in *Adams* and *Bobo* are quite similar.

[5] Mr. Grush's cross-motion for summary judgment, which was struck, also did not inform the Court of any restrictions or requirements imposed upon his commute which were any more

the specific provisions in the Employee Commuting Flexibility Act of 1996, quoted above. 29 U.S.C. § 254(a). Moreover, Mr. Grush has supplied documentation which actually implies that he may have had even *lesser* restrictions or requirements imposed on his commute than were discussed in *Adams* and *Bobo*. In his voluminous appendix of exhibits, Mr. Grush included various forms, manuals, and memoranda from the DEA that make it appear that diversion investigators such as Mr. Grush were not necessarily *required* to drive a government vehicle to work and were permitted to make personal stops while driving the government vehicle. Pl.'s Suppl. App. at 1-103, 134. In contrast, the employees in *Adams* and *Bobo* were required to drive government vehicles and were prohibited from making personal stops, yet still could not establish that their commutes constituted legally cognizable hours of work.

The closest Mr. Grush comes to indicating a difference between his commute and those at issue in *Adams* and *Bobo* is to state that he was required to drive from his home to various field work locations, rather than directly to the DEA office to which he was assigned, whereas, allegedly, the plaintiffs in *Adams* and *Bobo* did not have such a requirement. However, Mr. Grush has not explained why traveling to a different destination would transform the time he spends driving into "legally cognizable work." *See Adams*, 471 F.3d at 1325. Mr. Grush simply points out that his use of the government vehicle inured to the benefit of the DEA, as it permitted him to spend more time engaged in his duties as a diversion investigator. Yet, as the Federal Circuit held in *Bobo*, the fact that aspects of an employee's commute might inure to the benefit of the employer does not obviate the *de minimis* test. 136 F.3d at 1468. In regard to Mr. Grush's "field work" argument, this Court shares the view expressed by another judge of this court in a substantially similar case: "[a] change in the location of plaintiff's work does not materially alter the activities that plaintiff engages in while driving and does not distinguish the job classification of diversion investigator from that of the border patrol agents in *Bobo* . . . or the law enforcement officers in *Adams* . . . ." *Morgan v. United States*, 84 Fed. Cl. 391, 394 (2008).

Thus, the Court does not find that there is any basis for Mr. Grush's claim that his case is meaningfully distinguishable from the claims discussed in *Adams* and *Bobo*. Because Mr. Grush has not identified any characteristic of his commute that would distinguish *Adams* and *Bobo*, the Government has elected not to dispute any of Mr. Grush's factual allegations. *See, e.g.,* Def.'s Suppl. Br. at 1 ("We do not dispute that when [P]laintiff has driven a Government vehicle between home and work, the location of the work to which he drove was a 'field work' location."). Thus, in addition to finding that Mr. Grush's case is not factually distinguishable from *Adams* and *Bobo*, the Court finds that there is no genuine issue of material fact regarding the Government's motion.[6]

_____

burdensome than those dealt with in *Adams* and *Bobo*.

[6] On the issue of evidence, Mr. Grush does argue, however, that the Government's motion cannot be granted because the Government has not set forth sufficient evidence to support its motion. However, the Government has met its burden for establishing that Mr. Grush should not

### B.      Whether the Government is Entitled to Judgment as a Matter of Law

Next, as Mr. Grush should be aware, it is entirely immaterial whether *Adams* was "wrongly" decided. This Court is bound to follow the decisions of the U.S. Court of Appeals for the Federal Circuit. *See Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1353 (Fed. Cir. 2006); *Crowley v. United States*, 398 F.3d 1329, 1335 (Fed. Cir. 2005). As the Federal Circuit has stated, "[o]rdinarily, a trial court may not disregard its reviewing court's precedent . . . [unless] the circuit's precedent is expressly overruled by statute or by a subsequent Supreme Court decision . . . Otherwise, a circuit court decision, if applicable, controls until the circuit court overrules it en banc." *Strickland v. United States*, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005) (internal citations omitted). Here, the Court is not aware of any statute which overrules *Adams* and *Bobo*[7] and, as will be discussed next, does not believe any Supreme Court decisions have overruled those cases.

In his third argument, Mr. Grush alleges that two Supreme Court decisions impliedly overruled *Adams*. However, one of the two decisions, *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005), was issued before *Adams* and, therefore, cannot be said to have overruled *Adams*. The other case, *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 127 S. Ct. 2339 (2007), did not deal with the particular regulations at issue here and in *Adams*. *Coke*, 127 S. Ct. at 2344-49 (considering Department of Labor's interpretations of two regulations, 29 C.F.R. § 552.3 and 29 C.F.R. § 552.109(a), in deciding

---

be entitled to relief by pointing out the lack of allegations and evidence to support Mr. Grush's claim. As several other judges of this Court, as well as the Federal Circuit, have explained to Mr. Grush's counsel in similar cases, it is the plaintiff who ultimately bears the burden of establishing that his or her driving time activities constitute compensable work under the FLSA and are not excepted under the Portal-to-Portal Act. *See, e.g.*, *Adams*, 471 F.3d at 1326; *Morgan*, 84 Fed. Cl. at 395; *Forbes v. United States*, 84 Fed. Cl. 319, 321-22 (2008); *Hamilton v. United States*, 85 Fed. Cl. 206, 210 n.2 (2008). The Government need not set forth additional and independent evidence to establish Mr. Grush's lack of proper allegations and evidence. *Adams*, 471 F.3d at 1326 ("Since the burden of proof is on the plaintiffs, we reject their argument that summary judgment to the government was improper because the government presented minimal evidence.").

[7] Mr. Grush does cite 31 U.S.C. § 1344, titled "Passenger carrier use," for the proposition that an employee's commute must be considered compensable if the employee is engaged in "field work." However, the Federal Circuit in *Adams* addressed virtually the same argument, explaining that § 1344 only dictates when agency funds may be used to pay for an employee's use of a government vehicle (e.g., if the use is for field work) and does *not* indicate that authorization to use a government vehicle renders an employee's time spent commuting in the vehicle compensable under the FLSA and Portal-to-Portal Act. Thus, this statute clearly cannot be said to overrule the holding of *Adams*.

whether a domestic services employee was entirely FLSA-exempt).  At best, *Coke*, is relevant to Mr. Grush's claim only as a reiteration of the Supreme Court's holding in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984).  However, the Federal Circuit in *Adams* and *Bobo* already considered the specific regulations and OPM guidelines that form the basis of Mr. Grush's present *Chevron* argument, and concluded that they do not affect the *de minimis* inquiry for driving time claims.  *See Bobo*, 136 F.3d at 1465 (noting OPM interpretation of FLSA found at 5 C.F.R. § 551.401); *Adams*, 417 F.3d at 1327 (noting OPM statements on compensability of commutes in Federal Personnel Manual System Letter No. 551-10).[8]  Thus, the Court does not see how *Coke* could be said to have changed the law since *Adams*.

Accordingly, the Court holds that *Adams* and *Bobo* are still good law, are applicable to the present case, and are binding and controlling precedent.  Because Mr. Grush has not distinguished the holdings of *Adams* and *Bobo*, or otherwise shown why they do not apply here, the Court holds that, based on this authority, the Government is entitled to judgment as a matter of law.

## VI.    Conclusion

The Government has shown that the Federal Circuit's decisions in *Adams* and *Bobo* require dismissal of Mr. Grush's FLSA commuting time claim.  Because Mr. Grush failed to identify any characteristic of his commute that would distinguish his claim from those in *Adams* and *Bobo*, there is no genuine issue of material fact and the Government is entitled to judgment as a matter of law.  The Government's motion for partial summary judgment on Mr. Grush's commuting time claim is therefore GRANTED and the Clerk is directed to enter judgment in the Government's favor.

As the parties have stipulated to the dismissal with prejudice of all the remaining claims in Mr. Grush's complaint, the Clerk is further directed to dismiss the case.  No costs.

        s/ Edward J. Damich   
        EDWARD J. DAMICH
        Judge

---

[8] Mr. Grush does cite one OPM regulation that was not specifically addressed in *Adams* or *Bobo*, 5 C.F.R. § 551.422.  The portion Mr. Grush quoted states that "[t]ime spent traveling shall be considered hours of work if . . . (2) [a]n employee is required to drive a vehicle or perform other work while traveling."  However, Mr. Grush's argument fails to also mention that the very next subsection of 5 C.F.R. § 551.422 clarifies that "[a]n employee who travels from home before the regular workday begins and returns home at the end of the workday is engaged in normal 'home to work' travel; such travel is not hours of work."  5 C.F.R. § 551.422(b).  Thus, the citation to 5 C.F.R. § 551.422 is unavailing to Mr. Grush.